1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          WESTERN DIVISION

10

11  ANA R. JUAREZ,                )    No. CV 05-07563-VBK
                                  )
12              Plaintiff,        )    MEMORANDUM OPINION
                                  )    AND ORDER
13       v.                       )
                                  )    (Social Security Case)
14  JO ANNE B. BARNHART,          )
    Commissioner of Social        )
15  Security,                     )
                                  )
16              Defendant.        )
    _____)

17

18       This matter is before the Court for review of the decision by the

19  Commissioner of Social Security denying Plaintiff's application for

20  disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have

21  consented that the case may be handled by the Magistrate Judge.  The

22  action arises under 42 U.S.C. §405(g), which authorizes the Court to

23  enter judgment upon the pleadings and transcript of the record before

24  the Commissioner ("AR").  The parties have filed their pleadings and

25  supporting memoranda, and the Commissioner has filed the certified AR.

26  After reviewing the matter, the Court concludes that the decision of

27  the Commissioner must be reversed and the matter remanded for further

28  hearing.

1    Plaintiff's first issue is that the Administrative Law Judge

2 ("ALJ") erred in failing to consider the impact of her obesity on her

3 residual functional capacity ("RFC"). (Joint Stipulation ["JS"] at 4-

4 10.)

5    The ALJ did not make reference to Plaintiff's obesity in her

6 decision, a fact, Plaintiff urges, which merits remand.  Assuming that

7 the medical evidence in the Administrative Record ("AR") demonstrates

8 obesity, which the Commissioner does not dispute, the Court will

9 address Plaintiff's argument that it was the ALJ's responsibility,

10 pursuant to the mandates of Social Security Ruling ("SSR") 02-01p, to

11 discuss the impact of obesity on Plaintiff's functioning.

12    The medical sources upon whom the ALJ relied in making her

13 determinations did, in fact, note Plaintiff's obesity.  These included

14 Dr. Potter, a urologist (AR 158-159); Dr. Mojtahedian (AR 227) and

15 consultative examiner Dr. Srinivasan (AR 299-300).  These physicians,

16 while noting Plaintiff's weight and/or obesity, also assessed her

17 exertional capabilities in light of that knowledge.

18    Under the five step evaluative process, it is the claimant's

19 burden to demonstrate disability at steps one through four.  Thus, in

20 a case where the record indicates that a claimant's obesity affects or

21 exacerbates her other impairments, at step two an ALJ must consider

22 the combined effect of the obesity with any other impairments in

23 determining the existence of a severe impairment.  See, Burch v.

24 Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).  In its decision in Burch,

25 the Ninth Circuit relied upon SSR 02-01p (2002), noting that the Rule

26 does not shift the burden in the sequential evaluation process:

27        "An ALJ is not required to discuss the combined effects

28     of a claimant's impairments or compare them to any listing

2

1    in an equivalency determination, unless the claimant

2    presents evidence in an effort to establish equivalence."

3 (Id. at 683.)

4

5    Here, as in Burch, Plaintiff has not "pointed to any evidence of

6 functional limitations due to obesity which would have impacted the

7 ALJ's analysis." (Id. at 683.)

8    Similarly, in her argument to this Court, Plaintiff fails to

9 identify any listing level impairment which Plaintiff might meet if

10 her obesity were factored in combination with her existing

11 impairments.   Rather, Plaintiff simply proposes that the ALJ's

12 decision is defective because it fails to discuss the issue of

13 obesity.   In view of the fact that the examining physicians did take

14 note of Plaintiff's obesity, and did assess Plaintiff's functional

15 abilities in light of that knowledge, there is no error in the ALJ's

16 failure to specifically discuss obesity in the circumstances of this

17 case.

18    Plaintiff's second issue is that the ALJ depreciated Plaintiff's

19 subjective pain testimony for legally insufficient reasons.   The Court

20 agrees.

21    In her decision, the ALJ almost totally fails to discuss any

22 specific evidence in the record which would be a sufficient reason to

23 depreciate Plaintiff's credibility.   Instead, what is set forth in the

24 credibility section of the decision is a generic statement,

25 highlighted by the following language:

26    "... in light of discrepancies between the

27    [Plaintiff's] assertions and information contained in the

28    reports of the treating and examining physicians, the

3

1   allegations by the [Plaintiff] as to the intensity,
2   persistence, and limiting effects of her symptoms were not
3   well supported by the probative evidence and are not wholly
4   credible."
5   (AR 19.)
6
7      The Court is restricted to the body of the decision to determine
8   the adequacy of the ALJ's credibility determination.  The ALJ must
9   specify exactly what testimony is found not to be credible and,
10  further, must specifically discuss and identify evidence which
11  undermines the pain complaints:   "[g]eneral findings are
12  insufficient."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).
13  Moreover, SSR 96-7 delineates the factors which an ALJ should consider
14  in the credibility determination.   It is fundamental in Social
15  Security law that an ALJ may not reject a claimant's subjective
16  complaints simply based on lack of medical evidence which fully
17  corroborates the alleged pain severity.  See Bunnell v. Sullivan, 947
18  F.2d 341, 345 (9th Cir. 1991). Yet, that is what the ALJ did in this
19  case.  Moreover, the Commissioner's brief argument on the matter,
20  consuming 16 lines of a 33-page Joint Stipulation, does no more than
21  assert that the ALJ correctly determined Plaintiff's credibility based
22  on an assessment of the medical evidence.  If Plaintiff had such
23  normal results on medical findings, the Court wonders how she could be
24  found to have a severe impairment, or why the ALJ, at Step Four of the
25  sequential evaluation, determined that she could not perform her past
26  relevant work. Moreover, the Commissioner's reliance on the extent of
27  Plaintiff's activities of daily living ("ADLs") is misplaced, because
28  it nowhere appears in the decision of the ALJ as a basis for the

1  credibility assessment.

2      For the foregoing reasons, on remand, the issue of Plaintiff's
3  credibility will be readdressed.

4      Plaintiff's third issue is that the ALJ did not properly evaluate
5  whether or not she suffers from a severe mental impairment.  The Court
6  agrees with Plaintiff on this issue.  Citing only "the lack of
7  consistent treatment from a mental health specialist" (AR 18), the ALJ
8  found no severe mental impairment.

9      Although the ALJ relied on a purported lack of consistent
10 treatment, as Plaintiff notes, records indicate that she was taking
11 Prozac for depression in 2003. (AR 235.)  In addition, her regular
12 treating physician, Dr. Mojtahedian, specifically stated that she
13 suffers from "anxiety and depression." (AR 287-291.)  She was
14 prescribed an antidepressant, Zoloft, and an anti-anxiety drug, Xanax.
15 (AR 339-344.)  The ALJ totally failed to discuss these diagnoses by
16 her treating physician, who, although not a psychiatrist, may not be
17 ignored as unqualified simply because he is a general practitioner.
18 See Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir. 1987).

19     Finally, with regard to the mental impairment issue, the Court is
20 somewhat troubled by the Commissioner's argument on this matter. (See
21 JS at 20-21.)  Specifically, the Commissioner points to a Global
22 Assessment of Functioning ("GAF") assessment by Dr. Aguilar, which
23 yielded a score of 62. (JS at 21, citing AR 294.)  The GAF was not
24 discussed by the ALJ in her decision, and therefore, can form no basis
25 for her assessment that Plaintiff does not have a severe mental
26 impairment.  In addition, the Court has noted the Commissioner's
27 consistent argument, in other Social Security cases, that the GAF
28 score is not relevant to an assessment of a claimant's mental

impairment, as mandated by the Commissioner's own regulations. (See 20 C.F.R. §404.1520a, generally.)  The Court has noticed a disturbing trend in the Commissioner's position taken in litigation before it: when a plaintiff's GAF score is low, and the plaintiff argues that this is relevant evidence to establish a mental impairment, the Commissioner makes the very argument that Plaintiff makes in this case, which is that the GAF score is not relevant for these purposes. Conversely, when a plaintiff's GAF score is on the high side, the Commissioner appears to take the position that this indicates a lack of mental impairment.  The Court cautions the Commissioner that a consistent position should be taken on the issue of the relevance of the GAF scores in all cases argued before it.

On remand, the question of whether Plaintiff suffers from a severe mental impairment will be correctly evaluated.

Plaintiff's fourth issue is that the ALJ erred in failing to consider the impact of her chronic urinary infections on her RFC.

The ALJ did find that Plaintiff has recurrent urinary tract infections which are considered to be a severe impairment. (AR 16.) The issue at hand is whether the non-exertional impact of this impairment was adequately considered.  Plaintiff explicitly described these symptoms (AR 383-384), but the ALJ failed to incorporate these symptoms in her decision.  The ALJ's incorrect assessment of Plaintiff's credibility as to her subjective pain complaints, already discussed with regard to issue two, impacts issue four, and on remand, this matter will be reevaluated.

Plaintiff's fifth issue is that the ALJ failed to properly consider the effect of her fibromyalgia.  Although Plaintiff asserts that she has been diagnosed with fibromyalgia, citing various parts of

the record, it appears that although fibromyalgia has been seen as a possible cause for various symptoms, it has not been diagnosed. (See AR at 187: "Still suspect fibromyalgia.")   Nevertheless, there are various indications in the record that Plaintiff may suffer from this disease, and for that reason, on remand, the record should be developed either by recontacting examining and treating physicians, or by obtaining a proper consultative examination to determine whether Plaintiff suffers from fibromyalgia, and if so, its effects on her functional abilities.

Based upon the foregoing, this matter will be remanded for further hearing and development of the record consistent with this Opinion.   The decision of the Commissioner is reversed.

**IT IS SO ORDERED.**

DATED: August 14, 2006

                                   /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE